EVANS v. LANCASTER CITY ST. RY. CO. et al.

(Circuit Court, E. D. Pennsylvania. December 11, 1894.)

No. 18.

1. DEMURRER TO BILL OF DISCOVERY.

A demurrer to a bill of discovery, being a refusal to answer certain allegations of the bill, for reasons appearing upon the face of the bill and pointed out by the demurrer, will not be sustained, where immateriality is the sole ground of demurrer, unless the facts clearly show that the discovery sought is immaterial to the purposes of the suit.

2. SAME—UNLAWFUL SCHEME.

Where a bill of discovery charges the defendants with having united and combined in an unlawful scheme to the injury of the complainant, and he insists that it is essential to his relief that the acts of each of them in carrying that scheme into effect should be disclosed, and that full answers from all of them are requisite to that end, the court will grant the discovery asked for.

This was a suit by William E. Evans against the Lancaster City Street-Railway Company and others.

The bill set forth that the complainant was a citizen of the state of New York, and the owner of 32 shares of the Lancaster Traction Company, one of the defendants, by purchase, with power of transfer, from one Eby. Upon request for transfer, of the proper officers, of the said shares, he was refused, because the Pennsylvania Traction Company, another of said defendants, had unlawfully, by exceeding its charter privileges, acquired the control of the property, direction, and books of the said Lancaster Traction Company, and apprehending that the complainant, as a stockholder of said company, by proceedings in court might nullify such unlawful acquisition, the said Pennsylvania Traction Company used its unlawful control of the direction of said Lancaster Traction Company to prevent, and thereby prevented, an issuance of a new certificate of transfer of said shares of stock to the complainant. The bill averred that the Lancaster Traction Company was a corporation organized March 7, 1893, with a capital of $550,000, and also gave the dates of organization, amount of capital stock, etc., of the Lancaster City Street-Railway Company (the East End Passenger Railway Company and the West End Street-Railway Company having become merged in the former). The Lancaster & Millersville Railroad Company, the Lancaster & Columbia Railway Company, the Columbia & Ironville Street Passenger Railway Company, the Lancaster & Strasburg Railway Company, and the Columbia & Donegal Railway Company, were all defendants. The Lancaster Traction Company subsequently acquired the property and franchises of the Lancaster City Street-Railway Company. The Pennsylvania Traction Company was organized July 19, 1893, for the purpose of the construction and operation of motors and cables, or other machinery for supplying motive power to passenger railways, and the necessary apparatus for applying the same. On January 5, 1894, the Pennsylvania Traction Company, although it had no title to or interest in the said railways, beyond the ownership of a few shares of the capital stock, executed a mortgage to the Provident Life & Trust Company of Philadelphia, another defendant, for the securing of 1,500 coupon bonds for the sum of $1,000 each, and of 1,000 coupon bonds for the sum of $500 each, to be issued by the said Pennsylvania Traction Company, and in and by said mortgages undertook to convey to the said trustee the railways of the aforesaid companies, together with the motors, cars, franchises, and other appliances. The said mortgages were delivered to the said trustee and recorded. On February 3, 1894, the said Pennsylvania Traction Company procured a lease for a term of 999 years of all the aforesaid railway companies, and had the same recorded. At the time of the execution and delivery of the said leases, the Pennsylvania Traction Company possessed no railway whatever, but the railways embraced in said leases were already equipped for operation.

There was no statute of Pennsylvania granting power to said companies to lease their roads, or to the Pennsylvania Traction Company the power to acquire such franchises by lease or otherwise. The total capitalization of the said railways is $5,265,000, and the length of track is 40 miles,—a sum largely beyond the limit of $100,000 per mile of track fixed by the act of May 14, 1889, § 5. The bill further claimed that the issue of $660,000 of mortgage bonds and $330,000 of capital stock was purely fictitious, and in violation of the act under which the said Pennsylvania Traction Company was organized, which act forbids any increase of capital stock or indebtedness save for labor done or for money or property actually received. The said bonds and stock were issued in payment of the property of the said Lancaster Traction Company, the same being divided into 11,000 shares at $50 each, making altogether a payment of $990.000 without in anywise augmenting the property basis. A large part of the $2,000,000 of bonds secured by the said mortgage and a large portion of the capital stock of the said Pennsylvania Traction Company have been freely disposed of to officers, directors, and others for neither a money consideration nor for labor done, but as the fruits of the scheme aforesaid. The acquisition by said company of the control of the said railways, and the means used therefor, were charged to be violative of the rights of the complainant as a shareholder of the Lancaster Traction Company, and violative of the laws of Pennsylvania. The bill therefore prayed that defendants make answer to the averments set forth, that the Lancaster Traction Company be enjoined to issue a certificate for the said shares to the complainant, and that the Pennsylvania Traction Company be restrained from interfering therewith, and also be restrained from selling, disposing of, or impairing the status of any of, the property of the said companies; that the mortgage to the Provident Life & Trust Company be declared void, as also the leases and purchases of stock of the said railways; and that the said Pennsylvania Traction Company be enjoined to withdraw from all management, control, and interference with the said railways.

To this bill several of the defendants interposed demurrers in the following form: "And now this defendant doth demur in law to the said bill, and for cause of demurrer showeth that any discovery which can be made by this defendant touching any of the matters in the said bill of complaint contained cannot be of any avail to the said plaintiff for any of the purposes for which a discovery is sought against this defendant by the said bill, nor entitle the said plaintiff to any relief touching any of the matters therein complained of. Wherefore, and for divers other good causes of demurrer appearing in the said bill, this defendant doth demur to the said bill, and prays judgment of this honorable court whether it shall be compelled to make any other answer thereto; and it humbly prays to be hence dismissed, with its reasonable costs in this behalf sustained."

M. Hampton Todd, for plaintiff.

J. Hay Brown, R. C. Dale, and George Nauman, for defendants.

DALLAS, Circuit Judge (after stating the facts). This case has been argued upon demurrers filed by several of the defendants, and which have been treated by counsel, with apparent correctness, as demurrers to discovery, and not to relief; but "a demurrer to discovery, indeed, is not in its nature a demurrer at all, but a mere statement in writing that the defendant refuses to answer certain allegations in the bill, for reasons which appear upon the face of the bill, and which the demurrer points out." 1 Langd. Eq. Pl. § 97. The several refusals to answer which have been here interposed, though not all expressed in the same terms, are all based upon substantially the same ground, viz. that the discovery sought is immaterial to the purposes of the suit. This, however, is at least not so apparent on the face of the bill as to warrant the court in

assuming, at this stage and on these demurrers, that the facts inquired about are irrelevant. The theory of the bill appears to be that the defendants united and combined in an unlawful scheme to his injury; and he insists that it is essential to his relief that the acts of each of them in carrying that scheme into effect should be disclosed, and that full answers from all of them are requisite to that end. If this contention should be supported by the complainant, and if the bill should be ultimately sustained by the court, the right of the complainant to the discovery he seeks will have been established; but the order now made must be understood to be without prejudice to the right of the defendants, or any of them, to again raise, otherwise than by demurring to discovery alone, the questions which have now been discussed at bar. At present I need only say that I have no doubt that if the complainant is entitled to relief against all those whom he has joined as defendants, his right to discovery from all of them is unquestionable. The demurrers, including those joined with answers as well as those which have been separately filed, are overruled, and the demurrants are assigned to answer or plead, or to demur (but not to discovery merely), on or before the next rule day; and all questions of costs are reserved.